**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GOOGLE LLC,**<br><br>        **Petitioner,**<br><br>  **v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>        **Respondent.** | **Misc. Case No. 23-67 (JEB)**<br><br>**Under Seal** |

**MEMORANDUM OPINION**

On January 6, 2021, separate pipe bombs were discovered outside the headquarters of the Republican and Democratic National Committees.  According to the recently released Congressional Report on the incident, although the bombs never exploded, their discovery that day diverted law-enforcement resources away from the U.S. Capitol just as rioters were breaching its security perimeter and disrupting the certification of the 2020 presidential election. See Four Years Later: Examining the State of the Investigation into the RNC and DNC Pipe Bombs, U.S. House of Reps. at 1 (Jan. 2, 2025), https://perma.cc/L3DQ-GNW7.  Video footage subsequently revealed that the individual who placed the bombs was "carrying a backpack and wearing a grey-hooded sweatshirt, a mask, gloves, glasses, and a pair of Nike Air Max Speed Turf sneakers."  Id.  After four years of investigation, however, no suspect has yet been charged. Id.

But "not for lack of trying."  ECF No. 10 (Magistrate Judge Op.) at 1.  The United States has pursued multiple warrants throughout its investigation of the crime, including the one at issue here: a warrant directed to Petitioner Google LLC under the Stored Communications Act, 18 U.S.C. § 2703 et seq., seeking to de-anonymize user data obtained under prior warrants.  See

1

id. at 3–4.  After initially complying with those earlier warrants, Google — apparently reaching its limit — finally moved to quash the latest one, but its Motion was denied by Magistrate Judge Matthew Sharbaugh of this Court.  Google has now moved for review of his Order, asserting essentially the same menu of constitutional and statutory challenges.  Because the magistrate judge got it right, the Court will deny Petitioner's request.

## I.    Background

### A.  Statutory Framework

Before explaining how we got here, some background on the statutory framework is in order.  Congress enacted the SCA in 1986 as part of the Electronic Communications Privacy Act, Pub. L. No. 99-508, 100 Stat. 1848, in order to "regulate[] how stored wire and electronic communications may be lawfully accessed or disclosed."  In re Search of Info. Associated with [redacted]@gmail.com, 2017 WL 3445634, at *6 (D.D.C. July 31, 2017).  Section 2703 of that statute creates a framework through which the Government may compel service providers to disclose their customers' information, including the content of their electronic communications.

That framework, in brief, "provides a sliding scale of protections," requiring the Government to meet increasingly onerous standards to access more information.  Id.  It consists of three tiers.  First, the Government may by "subpoena" require a service provider to disclose certain basic subscriber information and content.  See 18 U.S.C. § 2703(a), (b)(1)(B)(i), (c)(2).  Such subpoenas do not require any showing of probable cause, but in certain instances they may require providing "prior notice" to the subscriber or customer.  See id. § 2703(b)(1)(B); see also id. § 2705 (Government may apply for court order authorizing it to delay notice for up to 90 days in certain circumstances).

Second, the Government may acquire a "court order" under § 2703(d) to compel disclosure of all the information obtainable via subpoena, plus "other information pertaining to a subscriber," id. § 2703(c)(1), "such as logs maintained by a network server." In re Search of Info. Associated with [redacted]@gmail.com, 2017 WL 3445634, at *8 (quotation marks omitted). Such orders, however, are available only if the Government "offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation," 18 U.S.C. § 2703(d), and in some circumstances also require prior notice to the subscriber or customer. See id. § 2703(b)(1)(B), (c)(3).

Finally, and most relevant for present purposes, the SCA permits the Government to require the disclosure of the widest possible range of information if it applies for a "warrant" "using the procedures described in the Federal Rules of Criminal Procedure" or a state counterpart. Id. § 2703(a), (b)(1)(A), (c)(1)(A). SCA warrants require no prior notice to the subscriber, but, under Federal Rule of Criminal Procedure 41, they — like all warrants — require "a judicial finding of probable cause based on sworn testimony or an affidavit." In re Search of Info. Associated with [redacted]@gmail.com, 2017 WL 3445634, at *8; see also id. at *18 (SCA "assuredly refers to Rule 41," though full scope of language ambiguous); Fed. R. Crim. P. 41(d) (requirements for warrant).

B. Factual and Procedural Background

Now for the current controversy. Throughout its investigation into the pipe bombs, the United States has repeatedly obtained a series of "reverse search" warrants directed to Google for information pertaining to various of its account holders or users. Reverse-search warrants are a peculiar species of warrant. They "differ from warrants authorizing surveillance of a known

suspect, since they are normally employed when the identity of a suspect is <u>unknown</u>."  <u>United States v. Easterday</u>, 712 F. Supp. 3d 46, 49 (D.D.C. 2024) (cleaned up).  The Government typically goes through a two-step process when seeking such warrants.  <u>See</u> ECF No. 1 (Mot. to Quash) at 5.  At step one, it obtains a warrant for anonymized information about various accounts or users that match certain criteria — <i>e.g.</i>, that they were in a particular location (a "geofence" warrant) or searched for certain terms (a "keyword" warrant) within a given timeframe.  <u>See id.</u>; <u>see also</u> <u>Easterday</u>, 712 F. Supp. 3d at 48–49.  After reviewing and culling that information, the Government then — at step two — obtains a second warrant or court order to de-anonymize accounts it wishes to investigate further.  <u>See</u> Mot. to Quash at 5; <u>Easterday</u>, 712 F. Supp. 3d at 49.

The United States followed that approach here.  Shortly after the events of January 6, it procured geofence warrants that sought to identify Google users who were near the RNC and DNC buildings during the relevant period.  <u>See</u> MJ Op. at 2.  After de-anonymizing some of that responsive information and uncovering no leads, <u>see</u> Mot. to Quash at 5–6, the Government then obtained a keyword warrant under § 2703 of the SCA and Rule 41 for anonymized information about users who had conducted searches related to: (1) the location of the RNC and DNC headquarters between January 1 and 5; and (2) news about the detonation or discovery of the bombs before the incidents became public knowledge.  <u>See</u> MJ Op. at 2; <u>see also</u> <u>In The Matter of the Search of Information Associated with Google Accounts</u>, No. 21-sc-542, ECF No. 3 (Keyword Warrant) at ECF pp. 11–12  (D.D.C. Feb. 16, 2021).  In response, Google turned over "thousands of responsive searches along with anonymized user data for an estimated 1,341 users" who had made those searches.  <u>See</u> MJ Mem. Op. at 3.

4

The Government then began a process of reviewing that information and seeking de-anonymization of the user data in tranches — step two.  See Mot. to Quash at 5.  In March 2021, it obtained a supplemental warrant under § 2703 and Rule 41 for identifying information on users who had made approximately 293 of the responsive searches.  Id.; see In The Matter of the Search of Information Associated with Google Accounts, No. 21-sc-542, ECF No. 7 (Suppl. Warrant One) at 46 (D.D.C. Mar. 30, 2021).  Google subsequently provided de-anonymized information on 251 users.  See Mot. to Quash at 8.  Seven months later, Respondent then obtained a second such warrant for another batch of users, but to no avail, as Google had apparently purged the files for that set.  Id.

A year and a half later, the United States procured the warrant at issue here.  Id. at 9.  Approved again under § 2703 and Rule 41, it sought identifying information about users who had made approximately 537 of the searches previously identified ("querying users"), as well as anyone who had shared devices or identifiers with those users ("technically connected users").  Id.; see In The Matter of the Search of Information Associated with Google Accounts, No. 21-sc-542, ECF No. 16 (Warrant) at ECF p. 65 (D.D.C. Apr. 19, 2023).  For the querying users — thought to encompass between 283–311 accounts — the warrant demanded the same information as did prior supplemental warrants.  See MJ Op. at 4.  Slightly more circumscribed information was sought for the technically connected users.  Id.  Google was directed to produce responsive information on or before May 14, 2023.  Id.

After informing the Government that it would be unable to comply by the warrant's deadline, id., Google then filed a Motion to Quash, raising several constitutional and statutory challenges.  On the Fourth Amendment front, it argued that the warrant was not supported by probable cause and was insufficiently particular.  See Mot. to Quash at 14–22.  It additionally

contended that, because the warrant burdened First Amendment freedoms, it was subject to additional scrutiny — which it should fail. See id. at 28–31. Finally, citing § 2703(d) of the SCA, Petitioner asserted that compliance would impose an "undue burden" and require the production of "unusually voluminous data." Id. at 32–37. In its Opposition, the Government contested each of these points but "affirmatively waive[d]" its request for any information related to "technically connected users." ECF No. 8 (Opp. to Mot. to Quash) at 3.

After briefing was complete on Google's Motion, the original magistrate judge assigned to the case neglected to resolve it for over a year. The matter was eventually reassigned to Magistrate Judge Sharbaugh, who promptly ruled on the Motion in November of last year. On the Fourth Amendment claims, he held that Petitioner was precluded from mounting a pre-execution attack on the warrant by United States v. Grubbs, 547 U.S. 90 (2006). See MJ Op. at 5–8. That holding "resolve[d] the bulk of Google's arguments," including its First Amendment contentions, which Magistrate Judge Sharbaugh held were "really nothing more than another gloss" on the Fourth Amendment claims. Id. at 8. As for Petitioner's § 2703(d) arguments, the magistrate judge assumed without deciding that undue-burden analysis was available for reviewing SCA warrants but held that, in any event, the warrant's only remaining request — for information on querying users — did not impose such a burden. Id. at 9–10. Magistrate Judge Sharbaugh thus denied Google's Motion as to querying users but granted it (as withdrawn) as to technically connected users, and he modified the warrant to strike language related to the latter group. Id. at 12. Google now seeks review of that Order and again asks that the warrant be quashed, see ECF No. 13 (Mot.), which the Government opposes. See ECF No. 15 (Opp.).

6

## II.    Legal Framework

Under 28 U.S.C. § 636(b)(3), magistrate judges "may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." This Court's Local Criminal Rule 57.17(a)(3) correspondingly grants them the "duty and the power" to "[i]ssue search warrants." Those warrants — as well as any "order for which review is requested" in a "criminal matter not assigned to a district judge" — "may be accepted, modified, set aside, or recommitted to the magistrate judge with instructions, after *de novo* review by the Chief Judge." Local Crim. R. 59.3(a), (b); see Matter of Search of Info. Associated with Cellular Tel. Towers, 616 F. Supp. 3d 1, 5–6 (D.D.C. 2022) ("[B]ecause this case arises out of the Magistrate Judge's 'additional duties' jurisdiction pursuant to § 636(b)(3), the Magistrate Judge's order is subject to *de novo* review by the district court.") (quoting In re Search of Info. Associated with [redacted]@gmail.com, 2017 WL 3445634, at *5).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Except in a few narrow circumstances, law-enforcement officers must obtain a warrant that complies with that provision before effecting a search. See Carpenter v. United States, 585 U.S. 296 (2018) ("[O]fficial intrusion into [an individual's] private sphere generally . . . requires a warrant supported by probable cause."). To so comply, a warrant must be issued by a "neutral, disinterested magistrate[]," Dalia v. United States, 441 U.S. 238, 255 (1979), and the supporting affidavit must establish probable cause and "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

**III.    Analysis**

Google here raises many of the same points as it did in its original Motion to Quash.  In particular, Petitioner argues that the magistrate judge erred by relying on "dicta" in <u>Grubbs</u> to bar a pre-execution constitutional challenge to the warrant; failing to conduct an "independent review of the Warrant's validity" in light of "new information" and "changed circumstances"; declining to adopt Google's First and Fourth Amendment positions; neglecting to hold that Google had a due-process right to notice and a hearing before "being compelled to assist in the execution of an unlawful warrant"; and rejecting its § 2703(d) undue-burden arguments.  <u>See</u> Mot. at i–iv.

The Court, however, upholds the magistrate judge on each issue.  It starts by addressing the threshold question of whether Petitioner has any statutory or constitutional right to bring a pre-execution motion to quash on the ground that the warrant violates the Fourth Amendment. Finding that Google does not, the Court next clarifies that, in any event, no changed circumstances call into question the original probable-cause determination, and Google's invocations of the First Amendment and the Due Process Clause do not entitle it to any further protections.  It concludes by rejecting Petitioner's claim that the records requested are too voluminous in nature to produce and that compliance would thus pose an undue burden.

  A.  <u>Pre-execution Constitutional Challenge</u>

    1.  *Statutory Language and <u>Grubbs</u>*

In contending that it may mount a pre-execution constitutional challenge to the warrant, Google runs headlong into the words of the SCA and the consensus view among courts.  Start with § 2703 itself.  The statute indicates only two circumstances in which providers may move to quash compulsory legal process issued under the provision.  The first is when a provider

"reasonably believes" that (i) "the customer or subscriber is not a United States person and does not reside in the United States" and (ii) "the required disclosure would create a material risk that the provider would violate the laws of a qualifying foreign government."  18 U.S.C. § 2703(h)(2)(A).  No party contends that this circumstance is relevant.

The second situation is when a "court order" under § 2703(d) — not a "warrant" — would require the production of "unusually voluminous" records or otherwise pose an "undue burden" on a provider.  Id. § 2703(d).  The Court will have more to say about this provision shortly.  For now, it suffices to note that it is far from clear that this provision applies at all to SCA warrants, much less that providers may use it to challenge their constitutionality.  Outside these two inapplicable avenues, the statute provides no other route to challenge compelled disclosure.

Federal Rule of Criminal Procedure 41, which governs the procedures for obtaining a search warrant — including under the SCA, see, e.g., id. § 2703(a), (b)(1)(A), (c)(1)(A) — is no different.  Nowhere does it authorize the target or recipient of a search warrant to challenge its legality before its execution.  Rather, as generations of criminal-procedure students have learned, it requires a judicial officer to find probable cause for issuing the warrant based on an officer's affidavit or sworn testimony, see Fed. R. Crim. P. 41(d), and it provides for challenging the fruits of illegal warrants via an *ex-post* motion to suppress.  See Fed. R. Crim. P. 41(h).  That is in stark contrast, for instance, to subpoenas, which explicitly do permit *ex-ante* challenges.  See Rule 17(c)(2) (permitting motions to quash or modify subpoena "if compliance would be unreasonable or oppressive"); In re Search of Information Associated with Facebook Accounts DisruptJ20, Lacymacauley, and Legba.Carrefour, 2017 WL 5502809, at *10 (D.C. Super. Ct. Nov. 9, 2017) ("Unlike subpoenas, search warrants generally are not subject to pre-enforcement challenge

9

because the Constitution imposed specific procedural safeguards for issuing search warrants, such as issuance by a neutral, detached judicial officer and the establishment of probable cause, that are not required in issuing subpoenas.").

Nor is there some independent Fourth Amendment right to bring a pre-execution challenge to a search warrant. The Supreme Court confirmed as much in Grubbs. That case concerned the constitutionality of "anticipatory warrants," which are executed only after a triggering condition occurs, such as the delivery of contraband to a location. See 547 U.S. at 92. In sanctioning such warrants, the Court also held that the triggering condition need not be specified in the warrant itself. See id. at 97–99. As part of that narrower holding, the Court said the following:

> The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, *ex ante*, the "deliberate, impartial judgment of a judicial officer . . . between the citizen and the police," and by providing, *ex post*, a right to suppress evidence improperly obtained and a cause of action for damages.

Id. at 99 (quoting Wong Sun v. United States, 371 U.S. 471, 481–82 (1963)) (citation omitted). This language closes any "third window" for challenging a warrant between issuance and execution. See MJ Op. at 6.

After Grubbs, trial courts — including in this district — have uniformly rejected pre-execution challenges to SCA warrants by the customers or subscribers whose information is sought. See, e.g., In re Search of Info. Associated with One Acct. Stored at Premises Controlled by Facebook, Inc., 2021 WL 2302800, at *2 (D.D.C. June 4, 2021) ("[C]ourts have found that account owners lack standing to challenge search warrants issued to electronic communications services under the Stored Communications Act prior to their execution . . . ."); United States v. Info. Associated with Email Acct. (Warrant), 449 F. Supp. 3d 469, 475–76 (E.D. Pa. 2020); In re

Search of Recs., Info., & Data Associated with 14 Email Addresses Controlled by Google, LLC, 438 F. Supp. 3d 771, 776 (E.D. Mich. 2020) ("In applying the holding in Grubbs to search warrants for emails, courts have concluded that the Fourth Amendment does not provide a chance to litigate the validity of a warrant before that warrant has been executed by the government.") (quotation marks omitted); Matter of Search of Info. Associated with One Email Acct., 677 F. Supp. 3d 580, 584 (E.D. Tex. 2023) (similar).

Google's main response to this caselaw is to produce a numbered list of prior instances in which it has challenged reverse-search warrants. See Mot. at 9–10. Yet none of these actually resulted in the grant of a motion to quash, as the Government withdrew the warrant in each case. A dogged determination to press its legal theories in various other courts is hardly a basis for the Court to adopt those theories here. Petitioner also breezily dismisses the language in Grubbs as "dicta," see Mot. at 7, but the passage was nothing of the sort. Rather, it was integral to the Supreme Court's rejection of an implicit assumption in the respondent's argument — namely, that officers executing search warrants "must present the property owner with a copy of the warrant" before conducting the search, see 547 U.S. at 98–99 — and was thus "necessary" to its holding. Cf. In re Grand Jury Investigation, 916 F.3d 1047, 1053 (D.C. Cir. 2019) ("[A] statement not necessary to a court's holding is dictum."). Even if it were dictum, moreover, this Court must nonetheless treat it as "authoritative." United States v. Oakar, 111 F.3d 146, 153 (D.C. Cir. 1997) ("Carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative . . . .") (quotation marks omitted).

### 2.    *Application of Grubbs to SCA Warrants*

That leaves on the table Google's argument that Grubbs nonetheless does not control because SCA warrants are simply different from traditional warrants. See Mot. at 8–9. The

11

cases cited previously, of course, had no concern in applying <u>Grubbs</u> to warrants issued under the SCA.  That said, as Petitioner points out only in its Reply, <u>see</u> ECF No. 16 (Reply) at 21, they admittedly confronted the slightly different circumstance of a <u>customer's</u> standing to bring a Fourth Amendment challenge — not a <u>provider's</u> ability to do so.  Google's position thus touches on a nuanced question, briefed by neither party, that is worth an extended discussion.

It is true that an SCA warrant is not completely like a traditional warrant in at least one relevant aspect: it requires a third-party service provider (here, Google) to "assist[] in [its] execution" by performing the search itself.  <u>See</u> Mot. at 8–9.  For that reason, among others, some courts have held that the SCA warrant is "a distinct procedural mechanism from a traditional Rule 41 search warrant" and "operates much like a subpoena."  <u>In re Search of Info. Associated with [redacted]@gmail.com</u>, 2017 WL 3445634, at *19; <u>see also</u> <u>Matter of Leopold</u>, 327 F. Supp. 3d 1, 8–16 (D.D.C. 2018) (comparing SCA warrants to traditional subpoenas), <u>rev'd on other grounds</u>, <u>In re Leopold</u>, 964 F.3d 1121 (D.C. Cir. 2020).  In like fashion, some courts have also accepted that providers may, in some circumstances, bring pre-execution motions to quash SCA warrants.  <u>See, e.g.</u>, <u>Matter of Leopold</u>, 327 F. Supp. 3d at 14 (citing § 2703(d) and endorsing proposition that providers may and should "move to quash SCA warrants that appear defective in some regard"); <u>In re Search of Google Email Accounts</u>, 99 F. Supp. 3d 992, 995–96 (D. Alaska 2015) (construing § 2703(d) to apply to warrants); <u>Matter of Warrant to Search a Certain E-Mail Account Controlled and Maintained by Microsoft Corp.</u>, 829 F.3d 197, 200–01 (2d. Cir. 2016) (accepting without discussion that provider may move to quash SCA warrant), <u>vacated as moot</u>, <u>United States v. Microsoft Corp.</u>, 584 U.S. 236 (2018); <u>Matter of Search of Content Stored at Premises Controlled by Google Inc.</u>, 2017 WL 3478809, at *1–2 (N.D. Cal. Aug. 14, 2017) (same).

Google neglects even to discuss these cases; regardless, the Court is unpersuaded that they support its position, and for several reasons. For one, none squarely confronted the precise question of whether a provider may bring a pre-execution constitutional challenge to an SCA warrant. Rather, they either assumed the availability of a pre-execution motion to quash as a general matter or to resolve a separate issue. See Matter of Leopold, 327 F. Supp. 3d at 5 (case concerned access to sealed judicial records); In re Search of Google Email Accounts, 99 F. Supp. 3d at 995–96 (petitioner sought modification of warrant for practical reasons and government never contested availability of motion); Microsoft, 829 F.3d at 200–01 (case concerned extraterritorial reach of SCA warrants); Matter of Search of Content Stored at Premises Controlled by Google Inc., 2017 WL 3478809, at *1 (same).

The Court, however, doubts that § 2703(d) does apply to SCA warrants, notwithstanding the caselaw applying it and the Government's concession that it does. See MJ Op. at 7; Opp. at 30–31. The pertinent statutory language by its plain terms governs only a court "order," which the SCA repeatedly distinguishes from a "warrant." See, e.g., §§ 2703(b), 2703(c), 2707(e)(1). Section 2703(d) as a whole, moreover, addresses the specific requirements for those court orders: it mandates, first, that the government offer "specific and articulable facts" demonstrating "reasonable grounds" to believe that the information sought is "relevant and material to an ongoing criminal investigation"; and second, that the order comply with relevant state law when requested by a state governmental authority. In that context, the immediately subsequent language authorizing a motion to quash an "order [issued] pursuant to this section" is most naturally read to refer to precisely that mechanism (i.e., a "court order for disclosure under subsection (b) or (c)"), and not the other compelled-disclosure mechanisms separately available with their own procedural requirements (i.e., warrants and subpoenas).

13

At least one state appellate court, moreover, has directly addressed this question and persuasively held (citing Grubbs) that providers have "no constitutional or statutory right to challenge an alleged defective warrant before it is executed." In re 381 Search Warrants Directed to Facebook, Inc., 132 A.D.3d 11, 14–15 (N.Y. App. Div. 2015).  That decision was later upheld — not vacated, as Google incorrectly states, see Reply at 21 — by the New York Court of Appeals, though on different grounds.  See In re 381 Search Warrants Directed to Facebook, Inc., 78 N.E.3d 141, 145, 153 (N.Y. 2017) (leaving open this question, but holding that court order denying motion to quash SCA warrant is in any event not appealable).  As the appellate court wrote, providers "cannot have it both ways" by acknowledging the more stringent "probable cause standard of warrants, while retaining the pre-execution adversary process of subpoenas."  In re 381 Search Warrants, 132 A.D.3d at 22; see also In re 381 Search Warrants, 78 N.E.3d at 146–49 (discussing why SCA warrants should be treated more like traditional warrants than subpoenas); United States v. Bach, 310 F.3d 1063, 1066 n.1 (8th Cir. 2002) ("Congress called them warrants and we find that Congress intended them to be treated as warrants.").

Third, even putting that aside and assuming that § 2703(d) sometimes authorizes motions to quash SCA warrants, Google would still be out of luck.  That is because the provision makes such motions available only when "the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on [the] provider."  The Court will later address Google's ancillary argument that the warrant required the production of "unusually voluminous" records and thereby imposed an undue burden.  See infra Section III.D.  Petitioner also glancingly suggests, however, that the "undue burden" language encompasses constitutional challenges to a warrant — in other words, that it is

an undue burden for a provider to comply with a warrant it finds unconstitutional.  <u>See</u> Mot. at

22–23.  This argument is not developed at any length, but the Court is in any event not inclined

to agree.  The language as a whole is oriented toward the <u>practical</u> difficulties of compliance, not

the legal validity of the disclosure mechanism.  It focuses on disclosure orders that compel

production of "unusually voluminous records" or "otherwise" would cause an undue burden.  In

context, that "otherwise" narrows the range of concerns to those similar in nature to the

production of voluminous records — <i>i.e.</i>, practical, logistical, or concrete burdens arising from

compliance.  <u>Cf.</u> <u>Fischer v. United States</u>, 603 U.S. 480, 487–91 (2024) (similarly reading

"otherwise" to narrow a statutory term's meaning).

Reading "undue burden" to include legal or constitutional objections would, moreover,

incongruously distinguish SCA warrants from all other warrants, which are not open to pre-

execution attack under the Fourth Amendment.  There is no indication in the statute that

Congress meant to depart so dramatically from the constitutional baseline.  Indeed, even courts

that have accepted the applicability of § 2703(d) to SCA warrants have rejected that providers

can use it to mount challenges to the warrant's legality.  <u>See, e.g.</u>, <u>In re Grand Jury Subpoena to</u>

<u>Google, LLC Dated Mar. 20, 2019</u>, 2020 WL 13505395, at *5–6 (S.D.N.Y. Jan. 21, 2020)

(holding that Google did not have standing under § 2703(d) to challenge a warrant just because it

found warrant unlawful); <u>see also</u> 1 James G. Carr & Patricia L. Bellia, <u>Law of Electronic</u>

<u>Surveillance</u> § 4.99 (Nov. 2024 update) ("A social media provider has no standing to challenge

the lawfulness of a warrant to obtain customer communications.  Thus, a court may, without

considering the lawfulness of the warrant, properly overrule a motion to quash the warrant.")

(footnote omitted).  If <u>customers</u> do not have standing to bring pre-execution Fourth Amendment

challenges to SCA warrants — as virtually every court to have addressed the question agrees, <u>see</u>

cases cited *supra* — it is doubtful that <u>providers</u> have standing to bring such challenges on their behalf.  <u>See</u> <u>In re 381 Search Warrants Directed to Facebook, Inc.</u>, 132 A.D.3d at 22 ("We see no basis for providing Facebook a greater right than its customers are afforded.").  The Court thus holds that Google has no statutory or constitutional right to move to quash the warrant on Fourth Amendment grounds.

The practical implications of adopting Google's position only confirm this result.  On Petitioner's read, even after the Government obtains the warrant from a neutral magistrate, providers would be empowered to hold up an investigation based on virtually any disagreement with the warrant.  That "could open the floodgates to huge numbers of such challenges, straining judicial resources" and "turning the swift execution of warrants into protracted legal battles that would prevent the Government from timely resolving its investigations."  <u>Information Associated with Email Account</u>, 449 F. Supp. 3d at 475–76.  Congress surely did not intend to sanction that outcome.

B.     <u>Validity of Warrant</u>

Brushing aside <u>Grubbs</u>, Google argues that the Court must re-evaluate the validity of the warrant *sua sponte* because there has been a "material change" in both the facts and the law underlying the original probable-cause determination, <u>see</u> Mot. at 5, 7, and because the warrant has become stale since its issuance.  <u>See</u> <u>id.</u> at 6.  Although Petitioner styles this argument as a response to intervening developments since the warrant's issuance, it essentially boils down to another pre-execution Fourth Amendment attack, and it is thus barred for all the reasons previously explained.  Even were that not so, however, the Court would disagree on the merits.

To begin, it is no doubt true that "when officers learn of new <u>facts</u> that negate probable cause, they may not rely on an earlier-issued warrant but instead must return to the magistrate."

United States v. Spencer, 530 F.3d 1003, 1008 (D.C. Cir. 2008).  A corollary of this principle is

that "the facts relied upon in the government's application must also support an inference that

evidence of a crime will be found in the place to be searched at the time of the search" —

otherwise known as the requirement that the warrant not be "stale."  United States v. Savoy, 889

F. Supp. 2d 78, 88 (D.D.C. 2012).  In such situations, officers have a duty to alert the magistrate

of the relevant changes.  See, e.g., United States v. Marin-Buitrago, 734 F.2d 889, 894 (2d Cir.

1984) ("[T]he magistrate must be made aware of any material new or correcting information.");

United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993) (law enforcement has "a duty to

provide the magistrate judge with any information which would undercut the warrant's

validity").

Google, however, is not part of law enforcement.  As a third-party service provider

subject to compulsory legal process, it has no such duty to report — much less a freestanding

right to seek review of any warrants with which it disagrees.  Rather, if law enforcement neglects

to report changes in material fact to the magistrate judge before the execution of the original

warrant, the proper remedy is a motion to suppress brought by an appropriate party.  See, e.g.,

Jacobs, 986 F.2d at 1235–36.  Indeed, Google's good-faith reliance on the warrant would

immunize it from any liability, see 18 U.S.C. § 2707(e), and the Court is aware of no authority

holding that the availability of this defense is contingent on a provider's essentially assuming the

role of law enforcement in policing the ongoing validity of warrants.  See Matter of Leopold, 327

F. Supp. 3d at 14 (discussing out-of-circuit cases construing good-faith defense).

Besides, Petitioner has not identified any "information about the search . . . that likely

was not available to the magistrate judge when the [w]arrant was issued."  Mot. at 5.  As for new

"facts," Google points only to the purportedly broad scope and vagueness of the original warrant,

17

as well as to the fact that account holders can delete their search history, which it surmises would have "likely" happened by now. Id. at 5–6. Even assuming that such observations would have been material to the original magistrate judge's probable-cause or particularity determinations, Google has produced nothing indicating that she was unaware of them when the warrant was issued. Nor does it justify its claim that the warrant is stale other than to essentially point out that its execution has been delayed by this very litigation. See Mot. at 6; Opp. at 8. That delay is regrettably attributable to the prior magistrate judge's tardiness in resolving the motion to quash. But that is hardly a reason to encourage recipients of § 2703(d) warrants to delay their execution via protracted litigation so as to later claim that the warrant is stale. See Opp. at 9.

Finally, no subsequent legal developments draw into question the validity of the warrant. The Court can imagine instances in which a change in relevant and controlling precedent between the time of a warrant's issuance and its execution might justify "return[ing] to the magistrate" for a fresh probable-cause determination. Spencer, 530 F.3d at 1008. Besides adverting to "numerous" such cases, however, Google cites only this Court's opinion in Easterday, 712 F. Supp. 3d 46 — a perplexing choice, as the Court there held that the geofence warrant used in the January 6 investigations was consistent with the Fourth Amendment. See id. at 48. In any event, Petitioner identifies no contrary or binding precedent that would have borne directly on the original warrant, and a "legal conclusion reached by a different judge in a different matter" does not furnish a reason to revisit it. Spencer, 530 F.3d at 1008.

C.     First Amendment

Google also devotes significant space to attacking the warrant on First Amendment grounds, arguing that it violates both its own and its users' free-speech rights, see Mot. at 11–18 & n.3, and that these rights are "independent" of any Fourth Amendment claims. See id. at 11.

18

Even accepting *arguendo* Petitioner's various theories about the types of First Amendment interests implicated and its standing to assert them, however, Google and its customers are still entitled to no more than what they have already received — the full protections of the Fourth Amendment.  As such, this argument reduces to a pre-execution Fourth Amendment attack on the warrant and is likewise barred by Grubbs.

As Google concedes, in Zurcher v. Stanford Daily, 436 U.S. 547 (1978), the Supreme Court held that warrants impinging on First Amendment interests raise no special concerns as long as they observe Fourth Amendment requirements "with scrupulous exactitude." Id. at 564 (quotation marks omitted).  At issue in that case was the search of a newspaper office.  Id. at 550–51.  Respondents argued that permitting searches of newspaper offices upon a warrant would impede First Amendment interests by disrupting publication, threatening confidential sources, deterring reporters from doing their jobs, silencing editors, and spurring self-censorship. Id. at 563–64.  While acknowledging these concerns, the Supreme Court held that the requirements of the Fourth Amendment sufficed to protect those important interests.  Id. at 565. Following Zurcher, our Circuit has likewise held that "the First Amendment affords no procedural or substantive protection against [g]ood faith criminal investigative activity beyond that afforded by the Fourth and Fifth Amendments." Reps. Comm. for Freedom of Press v. Am. Tel. & Tel. Co., 593 F.2d 1030, 1056 (D.C. Cir. 1978).

Google seeks to limit Zurcher to its facts, contending that the warrant here "is substantially broader and the First Amendment harms are far more pronounced," and therefore "the safeguards required by Zurcher may not be sufficient." Mot. at 17.  But it raises precisely the same concerns that respondents did in Zurcher, compare id. at 13–14 (claiming that people will "submit fewer search queries" or "self-censor" because of warrant) (emphases omitted),

with Zurcher, 436 U.S. at 564 (acknowledging worries that "reporters will be deterred" and "the press will resort to self-censorship"), and the Supreme Court nonetheless there held that, "[p]roperly administered, the preconditions for a warrant . . . should afford sufficient protection against" such harms. Zurcher, 436 U.S. at 565. This Court is bound by Zurcher and by the D.C. Circuit, neither of which endorses the position that Petitioner adopts. Seeing nothing to indicate that the warrant was improperly administered, the Court holds that Google is barred by Grubbs from bringing its pre-execution First Amendment challenge.

D.      Due Process and Burdensomeness

Finally, Petitioner argues that it has a due-process right "to bring a pre-execution challenge to a facially deficient and unduly burdensome warrant." Mot. at 20. Insofar as this argument attempts an end-run around Grubbs via a different constitutional provision, it must fail for all the same reasons.

To the extent, however, that Google seeks a hearing only to assert standard undue-burden claims already permitted by § 2703(d), the Government readily concedes that it may do so and contends that this provision satisfies any due-process rights. See Opp. at 30. As previously explained, the Court is skeptical that § 2703(d) relief is indeed available to warrant recipients, given its applicability only to court "order[s]." Yet the Court need not pass on whether such an interpretation would pose due-process concerns — *e.g.*, by imposing substantial burdens (potentially unknown to the issuing magistrate) on the warrant recipient without recourse. Cf. MJ Op. at 7 (citing cases finding right to hearing before complying with court orders under the All Writs Act). Assuming that the § 2703(d) motion is available for undue-burden challenges to warrants, such a mechanism would easily satisfy any due-process rights that Google might possess. By furnishing warrant recipients with an avenue for contesting production requests that

20

overburden their resources, it clearly provides "a meaningful opportunity to be heard on the deprivation of a protected liberty or property interest." Rason v. Nicholson, 562 F. Supp. 2d 153, 155 (D.D.C. 2008) (citing United States v. E-Gold, Ltd., 521 F.3d 411, 415 (D.C. Cir. 2008)). Petitioner does not make clear what additional process it believes it is due, other than an opportunity to rehash its constitutional objections to the warrant. See Mot. at 20–22.

In any event — and assuming *arguendo* that Google may make use of § 2703(d) to raise burdensomeness objections — the warrant here is not unduly onerous, nor does it require the production of unusually voluminous records. After the magistrate judge's order, the only remaining requests pertain to the querying users, which number, at most, 311 accounts. See MJ Op. at 10. While the warrant "undoubtedly impose[s] some operational and logistical burden on Google," id., the Court is at a loss to see — and Petitioner provides no support to show — how that burden here is undue. Instead, Google merely contends that the magistrate judge should have engaged in additional factfinding to determine whether the standards of § 2703(d) had been met. See Mot. at 22–23. But it points to no other facts that he should have been made aware of before ruling on the motion. That is not enough to show that the warrant here should be quashed.

## IV.    Conclusion

For the foregoing reasons, the Court will affirm the Order below and deny Google's Motion to Quash. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  February 25, 2025

21